UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUSTIN MAKI | No. 18 CR 596<br><br>Judge Thomas M. Durkin |

**PLEA AGREEMENT**

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant JUSTIN MAKI, and his attorney, MICHAEL ETTINGER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

**Charges in This Case**

2. The indictment in this case charges defendant with conspiring to possess with intent to distribute and distribute anabolic steroids, in violation of Title 21, United States Code, Section 846 (Count One), and conspiracy to commit international money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Four).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with conspiring to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of an anabolic steroid, a Schedule III controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846; and Count Four, which charges defendant with conspiring to transmit and transfer funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(h).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Four of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

a. With respect to Count One of the indictment:

Beginning no later than on or about September 25, 2014, and continuing until at least on or about February 23, 2017, at Naperville, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant JUSTIN MAKI did conspire with

2

Eric Capo, and others known and unknown, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of an anabolic steroid, a Schedule III controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

Specifically, MAKI first met Eric Capo in approximately 2013 at a bodybuilding event. Around the time that MAKI met Capo, MAKI began to purchase personal-use amounts of steroids from him. Eventually, MAKI agreed to work with Capo to import anabolic steroids from China into the United States and then to distribute those steroids in the United States.

Sometime in approximately 2014, MAKI opened a P.O. box at a UPS Store in Libertyville, Illinois, at the request of Capo. The purpose of opening the P.O. box was to have a place where Capo could receive shipments of bulk steroid powders from China. Sometimes Capo would tell MAKI what type and quantity of steroids was in a particular shipment, but other times Capo would not tell MAKI. MAKI estimates that, during the time he was working with Capo importing and distributing steroids, MAKI received approximately one parcel of powdered steroids—purchased by Capo from China—every month at the P.O. box.

Whenever MAKI received a parcel from China, Capo and MAKI met, usually in the parking lot of a restaurant located in Rosemont, Illinois, and MAKI gave Capo the steroid parcel. Capo and MAKI would subsequently meet again so Capo could give

MAKI vials containing oil-based steroids. Capo usually gave MAKI 100 to 200 vials of oil-based steroids each time they met. MAKI then brought the vials back to his house where MAKI affixed labels Capo made to the vials.

It was MAKI's responsibility to ship steroids to Capo's customers across the country. MAKI would often receive text messages from Capo instructing him who to send anabolic steroids to, as well as the type and quantity of steroids to send. MAKI then filled the order as instructed. MAKI usually shipped the steroids by FedEx. On certain occasions, MAKI had Capo's customers contact MAKI directly and tell MAKI what type and quantity of steroids they wanted MAKI to send them.

MAKI is aware that, at some point before he and Capo began working together, Capo purchased a large pill press so Capo could create steroid pills. MAKI stored the pill press in the garage at his residence. Capo would go over to MAKI's house and spend an entire day pressing steroid pills. Once the pills had been pressed, Capo put them in pill bottles, either Capo or MAKI labeled them, and then Capo and MAKI stored them at MAKI's residence until they were needed for distribution. After law enforcement raided Capo's house, MAKI threw out the pill press.

As payment for his participation in the steroids and money laundering conspiracies, MAKI received discounted prices on steroids from Capo. MAKI acknowledges that he is accountable for the following quantities of Schedule III anabolic steroids: 250 grams of equipoise, 750 grams of testosterone enthanate, and 100 grams of anavar.

b. With respect to Count Four of the indictment:

Beginning no later than on or about September 25, 2014, and continuing until at least on or about February 22, 2017, at Naperville, in the Northern District of Illinois, Eastern Division, and elsewhere, JUSTIN MAKI did conspire with Capo and others known and unknown, to knowingly commit an offense in violation of Title 18, United States Code, Section 1956, namely, to transmit and transfer funds from a place in the United States to and through a place outside the United States, namely, China, with the intent to promote the carrying on of specified unlawful activity, that is, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1956(h).

Specifically, on at least six occasions, Capo gave MAKI money to wire to China. Capo also gave MAKI the name of the person in China to send the money to. MAKI agreed to send, and did in fact send, a total of at least $7,000 to individuals in China via wire transfers that MAKI executed on or about September 25, 2014, November 12, 2015, January 26, 2016, April 6, 2016, April 12, 2016, and September 6, 2016. At the time he executed these wire transfers, MAKI knew the payments were to purchase bulk quantities of anabolic steroids that would be imported from China into the United States for the purpose of distribution.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to

be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

   a. Count One carries a maximum sentence of 10 years' imprisonment. Count One also carries a maximum fine of $500,000. Defendant further understands that with respect to Count One, the judge also must impose a term of supervised release of at least two years and up to any number of years including life.

   b. Count Four carries a maximum sentence of 20 years' imprisonment. Count Four also carries a maximum fine of $500,000, or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater. Defendant further understands that with respect to Count Four, the judge also may impose a term of supervised release of not more than three years.

   c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

   d. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 30 years' imprisonment. In addition, defendant is

subject to a total maximum fine of $1,000,000, a period of supervised release, and special assessments totaling $200.

### Sentencing Guidelines Calculations

9. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the

Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

    b. **Offense Level Calculations.**

<u>Count One</u>

    i.    The base offense level for Count One is 18, pursuant to Guideline §§ 2D1.1(a)(5), 2D1.1(c)(11), and Note to Drug Quantity Table (F), because the 1,100 grams of Schedule III anabolic steroid powders for which the defendant is accountable, have an equivalency of 44,000 25-milligram units, which is more than 40,000 units but less than 60,000 units.

<u>Count Four</u>

    ii.    The base offense level for Count Four is 18, pursuant to Guideline § 2S1.1(a)(1), because the defendant committed the underlying offense from which the laundered funds were derived, as provided in subparagraph (b)(i) above.

    iii.    Two levels are added to the offense level for Count Four, pursuant to Guideline § 2S1.1(b)(2)(B), because the defendant was be convicted under 18 U.S.C. § 1956.

<u>Grouping</u>

    iv.    Pursuant to Application Note 6 to Guideline § 2S1.1, Count One and Four are grouped pursuant to Guideline § 3D1.2(c). Pursuant to Guideline

§ 3D1.3(a), the offense level applicable to the group is the highest offense level for the counts comprising the group. Therefore, the offense level is 20.

v. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the

Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11. Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guideline range.

Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13. If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 596.

17. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

18. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    b.  **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at

sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

19. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

20. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

21. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

25. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant,

any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 1/22/19

_____
JOHN R. LAUSCH, JR. by C. Hotaling
United States Attorney

_____
ANDREW C. ERSKINE
Assistant U.S. Attorney

_____
JUSTIN MAKI
Defendant

_____
MICHAEL ETTINGER
Attorney for Defendant